
FILED IN OPEN COURT
JUL -8 2013
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:13-cr-00248 |
| v. ) | |
| ) | Honorable Claude M. Hilton |
| GARRETT LEE CLARK, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate and agree that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

1. Between in and around late 2009 and continuing until in and around May 2011, within the Eastern District of Virginia and elsewhere, the defendant, Garrett Lee Clark, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with Marvin Powers, Jr. (also known as "Marv"), Munir Abdalla Saad, Anthony Guidry, Sr. (also known as "Ant"), and others, known and unknown, to unlawfully, knowingly, and intentionally distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. In and around late 2009, the defendant, who lived in Kansas, met Marvin Powers, Jr. (hereafter "Powers"), who lived in California. Powers told the defendant he could supply the defendant with wholesale amounts of California-grown marihuana that the defendant could then sell to others for profit. The defendant agreed to work with Powers and their business

relationship lasted until in and around May 2011. During the course of the conspiracy, the defendant knew that Powers supplied wholesale amounts of marihuana to other people living in Kansas, to include two people whose respective initials are J.S. and R.W.

3. The marihuana was transported from California to Kansas in two ways. First, it was sent through the mail or common carrier like Federal Express. Second, it was driven from California to Kansas. Through either method, multiple pounds of marihuana were transported at a time, and the defendant and co-conspirators in Kansas often split up the shipments of marihuana amongst themselves. The defendant typically received five pounds of marihuana out of each shipment.

4. Powers fronted the marihuana to the defendant and co-conspirators in Kansas, that is, he loaned it to them on consignment and required them to pay for it after they sold it to other people for profit. Powers directed the defendant and co-conspirators to get the money back to California by mailing it, transmitting it through bank transfers, or having it driven out to California.

5. During the course of the conspiracy, the defendant knew Powers was working with Munir Abdalla Saad, another California resident, to supply the defendant and co-conspirators with marihuana. Over the course of the conspiracy, Powers and Saad provided the defendant and co-conspirators with various bank accounts into which proceeds from their sale of marihuana were to be deposited.

6. During the course of the conspiracy, the defendant knew that Powers was also working with a person in California, whom Powers and co-conspirators referred to primarily as "Ant" and who the government has identified as Anthony Guidry, Sr. The defendant did not know Guidry or the people Guidry was supplying with marihuana to sell, but acknowledges that

the government would have proven at trial that at least one of those people, Tracy Christopher King (also known as "T.C."), resided within the Eastern District of Virginia, where he received marihuana from Guidry during the course and in furtherance of the conspiracy.

7. During the course and in furtherance of the conspiracy, the defendant communicated with his co-conspirators via telephone and via text message to discuss and further their drug trafficking activity.

8. During the course and in furtherance of the conspiracy, the defendant and his co-conspirators employed various methods to avoid the detection of law enforcement, including: communicating on pre-paid phones not associated with their true names; frequently changing phones and phone numbers; renting vehicles to make trips related to the conspiracy; wrapping marihuana packages so that the scent of marihuana could not be detected from the outside; sending packages of marihuana to many different and varying addresses; using false names on marihuana packages; and remitting payment for marihuana by postal mail order, courier, cash sent through the mail, and making cash deposits, in amounts under the $10,000 reporting requirement, into bank accounts.

9. During the pendency of the conspiracy, the defendant was personally involved in the distribution or possession with the intent to distribute, or it was reasonably foreseeable to the defendant that his co-conspirators distributed or possessed with the intent to distribute in furtherance of the conspiracy, of at least 100 kilograms, but less than 400 kilograms, of a mixture and substance containing a detectable amount of marihuana.

10. The acts taken by the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing Statement of Facts does not

describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this Statement of Facts.

11. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: _____

Sean P. Tonolli
Assistant United States Attorney

Defendant's Signature

After consulting with my attorney and pursuant to the plea agreement entered into this day between me, Garrett Lee Clark, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 1-2-13

Garrett Lee Clark
Defendant

Defense Counsel's Signature

I am the attorney for the defendant, Garrett Lee Clark. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 1/7/2013

Chong C. Park
Counsel for Defendant